IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RANDALL B. CARTER,<br><br>    Plaintiff<br><br>    v.<br><br>ALK HOLDINGS, INC., d/b/a<br>ACME Security; MICHAEL D.<br>HASSEBROCK; and JOHN DOE I,<br><br>    Defendants. | CIVIL CASE NO.<br>1:06-CV-2080-JTC |

**O R D E R**

This matter is currently before the Court on Defendants ALK Holdings, Inc. and Michael D. Hassebrock's motion to dismiss [#6].

**I.  Background**[1]

Plaintiff Randall B. Carter is a Georgia resident and former employee of Defendant ALK Holdings, Inc., a Georgia corporation. Defendant Michael D. Hassebrock, also a Georgia resident, is the sole owner of Defendant ALK Holdings, which does business as ACME Security ("ACME"). ACME is a company that provides security systems and solutions to its customers through the use of third-party security products. For example, Defendant ACME provides and services the locks on safe-deposit boxes at banks.

---

[1] The Court accepts the Complaint's well-pleaded allegations and construes the facts in the light most favorable to Plaintiff.

Plaintiff Randall Carter is the former vice president and general manager of ACME.  He alleges that during his employment with ACME, he invented on his own time and with his own resources a new locking mechanism ("the Carter invention") for safe-deposit boxes that significantly decreases the possibility that one key can open multiple boxes in the same bank.  According to Carter, ACME and Hassebrock initially declined interest in the invention when he presented them with the device.  Hassebrock later approached Carter, however, and informed him that a bank was potentially interested in licensing the invention.  Hassebrock proposed a "50/50 partnership" with Carter, and also retained a patent attorney, Defendant John Doe I, to draft a provisional, and later a non-provisional, patent application for the Carter invention.  In addition to Plaintiff Carter, the patent applications listed Hassebrock as an inventor of the locking device.

After the patent application was filed, Hassebrock, over the course of several months and in conjunction with employment negotiations, demanded that Plaintiff Carter assign most or all of his rights in the invention to ACME.  Carter consistently refused, and ACME eventually terminated his employment.  This lawsuit followed.  The gravamen of Carter's Complaint is that Defendants have attempted to steal his invention by misidentifying Hassebrock as an inventor on the patent application and by coercing Carter

to assign the invention to ACME.

## II.   Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) motion does not test whether Plaintiff will prevail on the merits; it tests merely whether the Complaint properly states a claim upon which relief may be granted. "The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).  A claim should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts" which would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In considering a motion to dismiss, the Court must accept the Complaint's allegations as true and construe them in the light most favorable to Plaintiff.  Powell v. United States, 945 F.2d 374, 375 (11th Cir. 1991).

## III.   Discussion

The Complaint charges Defendants with a plethora of claims, each of which is in some way related to Carter's claim that Defendants intentionally misidentified Defendant Hassebrock as a co-inventor on the patent

application and then forced him to assign his rights in the invention. As discussed below, none of Plaintiff's claims states a claim under federal law upon which relief may be granted.

### A. Count I – Violation of Constitutional Rights

Count I of the Complaint charges Defendant John Doe I with "violation of Article I, Section 8, Clause 8 of the United States Constitution and 35 U.S.C. et seq."[2]  Carter's cause of action set forth in this count is puzzling, because the portion of the Constitution cited is the provision which gives Congress authority to regulate patents and copyrights. See U.S. Const. art. I, § 8, cl. 8 ("The Congress shall have Power . . . To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries . . . ."). Nevertheless, Carter contends that:

> Randall B. Carter is entitled to an order from this Court declaring that John Doe I, by acting as a licensed patent attorney under the authority of the United States Patent and Trademark Office and through the Patent Laws of the United States, has violated Randall B. Carter's Constitutional Rights by depriving Randall B. Carter of his right to join in the prosecution of his patent application and to secure his Constitutional right of the exclusive

---

[2] Plaintiff Carter's general citation to Title 35 of the United States Code is unhelpful.  If Carter desires to assert a cause of action under the Patent Act in this count, as he has done in other portions of the Complaint, he should be more specific.  It is not the duty of the Court to scour the statute books in search of a cause of action.  In any event, it is clear that this claim, at bottom, seeks relief for violation of an alleged constitutional right.

>right to his invention, and moreover by continued, improper and oppressive threats of termination unless Randall B. Carter would acquiesce in such intimidation and hence assign his rights to Acme.

(Compl. ¶ 36.)

Section 8 of Article I of the Constitution is directed to delimiting the scope of Congress's authority. Clause 8, the provision cited by Carter in support of his alleged constitutional rights, gives Congress the specific authority to promulgate laws relating to patents and copyrights. As should be obvious, this provision has absolutely nothing to do with Carter's purported constitutional "right to join in the prosecution of his patent application" or "right [to] the exclusive right to his invention." Simply put, there is no private cause of action for Carter under Article I, Clause 8, Section 8 of the U.S. Constitution.[3] Count I is **DISMISSED**.

B.     Counts II and III – False Designation of Origin; False Advertising

Plaintiff Carter charges Defendants in Count II with false designation of origin in violation of Section 43(a) of the Lanham Act. Prior to Carter's departure from ACME, Hassebrock and Carter, acting on behalf of ACME,

---

[3] Notably, Defendants argued as much in their motion to dismiss and Plaintiff failed to address the argument in his response. "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed." Kramer v. Gwinnett County, Ga., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) (Evans, C.J.); cf. N.D. Ga. R. 7.1B. Because Plaintiff failed to respond to Defendants' argument regarding this claim, the Court deems it abandoned. See Sherk v. Adesa Atlanta, LLC, 432 F. Supp. 2d 1358, 1374 (N.D. Ga. 2006) (Camp, J.).

engaged in discussions with Wachovia Corporation regarding a possible sale of locks made according to the Carter invention.  Consequently, Carter argues that these discussions constitute a false designation of origin because Defendants represented to Wachovia "that [ACME], and not Randall B. Carter, was to be the source of the goods."  (Compl. ¶ 41; see also id. ¶ 40.)

Section 43(a) prohibits a person from making any "false designation of origin . . . which . . . is likely to cause confusion . . . as to the origin . . . of his goods."  15 U.S.C. § 1125(a)(1)(A).  Plaintiff misunderstands the nature of false designation of origin.  As the Supreme Court recently made clear, the "origin" of "goods" is not "the author of any idea, concept, or communication embodied in those goods," but is instead "the producer of the tangible goods that are offered for sale . . . ."  Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 37, 123 S. Ct. 2041, 2050 (2003).

Here, Plaintiff Carter alleges that Defendants ACME and Hassebrock offered to sell Wachovia locks based in whole or part on the Carter invention.  It is clear from the Complaint, however, that should the sale to Wachovia ever materialize, the "origin" of the locking devices would be Defendants (or perhaps some other company contracted to manufacture the locks), who would be the "producer of the tangible goods."  The origin would not be Carter, even though he may be "the author of [the] idea . . . embodied in those

goods." If, for example, Carter physically manufactured locks made according to his invention and Defendants repackaged them as their own and sold them to Wachovia, he would have a viable reverse passing off claim under the Lanham Act. But those are not the facts of this case. What Carter alleges is that Defendants are offering to sell locks to Wachovia and are not properly attributing the fact that Carter may have invented the underlying concept. This is not a cognizable claim under Section 43(a). Count II is **DISMISSED**.

Carter contends in Count III that Defendants have engaged in false advertising. Section 43(a) of the Lanham Act prohibits a person from making any "false or misleading description of fact . . . or false or misleading representation of fact . . . which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities . . . ." 15 U.S.C. § 1125(a)(1)(B). In this portion of the Complaint, Carter alleges that "through the unlawful listing of Michael D. Hassebrock as a co-inventor on the patent application, [Defendants] continue to unlawfully state or misleadingly suggest sponsorship and/or approval to the goods by Randall B. Carter." (Compl. ¶ 50.)

These allegations do not state a claim for false advertising. First, the Lanham Act prohibits false or misleading representations in connection with

"commercial advertising or promotion." Plaintiff Carter's allegations revolve around his central charge that the patent application misidentifies Defendant Hassebrock as an inventor. Nowhere does the Complaint allege that Defendants have made commercial representations either that Hassebrock invented the invention or that Carter approves the locks made according to the invention. Second, because the alleged misrepresentations involve only the pending patent application, and not any product or service, they do not fall within the Lanham Act's proscriptions. Cf. digiGAN, Inc. v. iValidate, Inc., 71 U.S.P.Q.2d 1455, 1459-60 (S.D.N.Y. 2004) ("A patent is not a 'good or service' as those terms are used in the Lanham Act."). Finally, the Court notes that even were Carter able to survive these initial defects, a determination of whether the alleged representations are actually false would require the Court to delve into the inventorship issue, which as discussed immediately below, it cannot. For these reasons, Count III is **DISMISSED**.

    C.    Counts V and VI – Modification of Inventorship

In Counts V and VI, Carter requests the Court declare him the sole inventor of the invention embodied in the non-provisional and provisional patent applications filed with respect to the locking mechanism. The Patent Act contain two provisions directed to modification of inventorship. Under 35 U.S.C. § 116, which deals with inventorship vis-a-vis patent applications,

8

> Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director [of the Patent and Trademark Office] may permit the application to be amended accordingly, under such terms as he prescribes.

Under 35 U.S.C. § 256, which deals with inventorship vis-a-vis issued patents,

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error. . . .  The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

Section 116 is at issue here because Plaintiff Carter requests that inventorship be modified in a currently pending application.

It is evident from these related provisions, however, that Congress did not intend for district courts to become involved in the adjudication of inventorship until after a patent has issued.  Section 116, directed to patent applications, mentions only the Patent and Trademark Office's ("PTO") ability to modify inventorship.  In contrast, § 256, which is directed to issued patents, gives both the PTO and the courts authority to adjudicate inventorship.  These complementary provisions evidence a scheme in which

Congress intended for courts to become involved in inventorship only after the patent has issued. Sagoma Plastics, Inc. v. Gelardi, 366 F. Supp. 2d 185, 188 (D. Me. 2005) ("Given the structural parallels between the two provisions, it can be inferred that Congress' clear delegation of power to the courts in § 256 to correct issued patents and its failure to make any such express delegation in § 116 indicates a conscious choice to bar the courts from correcting errors regarding inventorship until after the patent has issued."). This construction is supported not only by the text of the statutes but also by common sense. If the PTO determines that the invention claimed in the application is not patentable, or that the portions claimed by the putative inventor are not patentable, a long and costly litigation in district court over inventorship would be futile as well as wasteful. See id. at 188 ("It seems unlikely that Congress intended to authorize a scheme in which such a waste of scarce judicial resources was possible.").

Thus, so long as the patent application is pending in the PTO, Plaintiff Carter cannot state a claim for modification of inventorship under § 116. Numerous courts have so held. E.g., E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578, 584 (6th Cir. 2003); Sagoma Plastics, 366 F. Supp. 2d at 190; cf. Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1356 n.1 (Fed. Cir. 2004) (stating, in dicta, "The text of section 116 . . . only grants the [Director]

the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications."). Counts V and VI are **DISMISSED**.

>   D. Count VIII – "Breach of Fiduciary Duty by John Doe I in Violation of 35 U.S.C. et seq., 37 C.F.R. et seq., and the Manual of Patent Examining Procedure"

In this count Carter attempts to manufacture a federal cause of action by couching a garden-variety malpractice claim in terms of patent law. (E.g., Compl. ¶ 82 ("John Doe I has breached his fiduciary and legal duties by continuing representation of two parties with conflicted interests and by sacrificing the rights of one party, Randall B. Carter, for the benefit of the other party, [ACME].").) There is no such federal cause of action. Count VIII is **DISMISSED**.

>   E. Count IX and X – Violations of the Sherman Act

In Count IX, Carter charges Defendants with violation of Section 1 of the Sherman Act, which prohibits contracts, combinations, and conspiracies in restraint of trade. 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.") In Count X, Carter charges Defendants with violation of Section 2 of the Sherman Act, which prohibits monopolization, attempted monopolization, and

conspiracy to monopolize.  15 U.S.C. § 2 ("Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .").

The principal facts underlying Carter's antitrust claims involve his contention that Defendants "conspired . . . to coerce and intimidate [Carter] to assign his inventive rights [in the invention] to ACME."  (Compl. ¶ 93.)  According to Carter, if he had not been forced to assign the invention to ACME, he, as a patent co-owner, if the patent eventually issued, would have been entitled to practice the invention, or license the invention to others, without Defendants' permission.  Thus, because of this coerced assignment, Carter argues Defendants have conspired to remove a competitor from the marketplace in violation of Section 1 of the Sherman Act.  Similarly, Carter argues this alleged conspiracy to eliminate him as a competitor evidences an unlawful attempt to achieve a monopoly in violation of Section 2 of the Sherman Act.

Carter's Complaint does not state a claim under the Sherman Act.  A party who alleges violation of either of these provisions must allege damage to competition in general, not merely damage to a competitor.  See Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns., Inc., 376 F.3d 1065,

1069 (11th Cir. 2004); see also Am. Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569, 1579 n.8 (11th Cir. 1985) ("Harm to competition is a necessary element of all private antitrust suits under Sections 1 and 2 of the Sherman Act . . . ."). Here, Carter has alleged only that Defendants' alleged actions would prevent him from entering the marketplace in the event a patent issues, not that their actions would have any negative impact on competition in general.

This defect to Carter's Sherman Act claims brings the Court to a larger problem with the Complaint – it relies, indeed is dependent, upon the assumption that a patent will eventually issue on the invention. Although the pending application may eventually ripen into a patent, it is also possible that it will not. Until such time as a patent does issue, anyone, including Carter, is free to practice the invention set forth in the patent application. There is simply no viable Sherman Act claim on the facts alleged by Carter. Counts IX and X are **DISMISSED**.[4]

---

[4] Multiple other defects exist with respect to these claims. For example, it is unlikely that Carter could establish the "conspiracy" necessary to go forward on his Section 1 conspiracy to restrain trade claim because the alleged conspirators, Defendants Hassebrock and John Doe I, acted in their capacity as agents for Defendant ACME. Cf. Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952) ("A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."). In addition, Plaintiff Carter cannot show – particularly at this stage where all that exists is a pending patent application – a "dangerous probability" that Defendants might have achieved monopoly power, a required element for his Section 2 attempt to monopolize claim. Tech. Res. Servs., Inc. v. Dornier Med. Sys., Inc., 134 F.3d 1458, 1466 (11th Cir. 1998).

F.    Count XI – Violation of 35 U.S.C. § 122

Carter charges Defendants Hassebrock and John Doe I in Count XI with violation of 35 U.S.C. § 122. This section provides, in relevant part, that "applications for patents shall be kept in confidence by the Patent and Trademark Office and no information concerning the same given without authority of the applicant or owner . . . ." 35 U.S.C. § 122(a). Carter argues that Defendants Hassebrock and John Doe I have somehow violated this provision "through the unlawful listing of [Taylor] and [Hassebrock]" on the patent application, which according to Carter has resulted in "significant harm to the right of [Carter] to have his application remain confidential for a certain period of time." (Compl. ¶¶ 106-07.)

As seen in the text of § 122, this statute imposes a duty <u>on the PTO</u> to keep patent applications in confidence subject to the exceptions listed in § 122(b). It has absolutely nothing to do with, nor can it support, Carter's claim that Defendants have violated the provision by listing on the patent application an inventor who Carter claims should not be there. Count XI is **DISMISSED**.[5]

G.    State Law Claims

Because the Court has dismissed all federal claims over which it has

---

[5] Notably, Carter did not respond to Defendants' argument that no such cause of action exists. The Court therefore deems it abandoned.

jurisdiction, the Court declines to exercise supplemental jurisdiction over Carter's remaining state law claims for fraud (Count IV), breach of fiduciary duty (Count VII), tortious interference with a prospective business relationship (Count XII), defamation (Count XIII), deceptive trade practices (Count XIV), and breach of contract (Count XV).  See 28 U.S.C. § 1367(c).  Therefore, these claims are **DISMISSED without prejudice**.

>    H.    Failure to Serve Defendant John Doe I

On February 7, 2007, the Court directed Plaintiff Carter to show cause why the Court should not dismiss the claims against Defendant John Doe I pursuant to Rule 4(m) for failure to effect timely service of process.  Plaintiff Carter responded and explains that he believed the matter would be settled before he "would be forced to identify an attorney as a fraudfeasor on the public record, to file State Bar complaints against the attorney, and to make an appropriate report to the United States Patent and Trademark Office, where such attorney Doe I is registered to practice."  (Pl.'s Resp. to Order to Show Cause at 2.)  Thus, Plaintiff claims he was engaging in professional courtesy by not naming (or serving) Defendant John Doe I until it became necessary to do so.

Carter's explanation is disingenuous, however, because he actually identified John Doe I by name several times before service was to be effected,

by which time the matter would presumably be settled.  For example, Plaintiff Carter identified John Doe I as Justin S. Rerko in his response to Defendants' motion to dismiss almost two months prior to the 120 day service deadline.  Once the cat was out of the bag, so to speak, Carter had ample time to serve Mr. Rerko and amend his Complaint accordingly.

Plaintiff Carter has not shown cause for his failure to timely serve Defendant John Doe I.  Accordingly, the Court **DISMISSES** all claims against Defendant John Doe I pursuant to Rule 4(m).

### IV. Rule 11 Sanctions

Pursuant to Rule 11, when an attorney files a pleading in federal court, he

> is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . .

Fed. R. Civ. P. 11(b)(2).  Under this provision, the Court has discretion to impose Rule 11 sanctions if a party "files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law . . . ." Anderson v. Smithfield Foods, Inc., 353 F.3d 912, 915 (11th Cir. 2003).  The attorney's conduct is tested under a "reasonableness under the circumstances" standard.

Id.; see also Kaplan v. DaimlerChrysler, A.G., 331 F.3d 1251, 1255 (11th Cir. 2003) ("[C]ourts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified.").

Though the Court has found that each of Plaintiff's federal claims fails to state a claim upon which relief may be granted, the Court finds that three of Plaintiff Carter's claims, in particular, appear to run afoul of Rule 11 by presenting baseless legal theories with no chance of success nor for which a reasonable argument could be advanced. The offending claims are: (i) alleged violation of Article I, Clause 8, Section 8, of the U.S. Constitution (Count I); (ii) breach of fiduciary duty in violation of the Patent Act, the Code of Federal Regulations, and the Manual of Patent Examining Procedure (Count VIII); and (iii) violation of 35 U.S.C. § 122 (Count XI).

Pursuant to Rule 11(c)(1)(B), counsel for Plaintiff Carter is **DIRECTED** to **SHOW CAUSE** within ten (10) days of entry of this Order why he should not be sanctioned for presenting the frivolous claims discussed above. Defendants are **DIRECTED** to respond within ten (10) days of Plaintiff's submission. Both parties are **DIRECTED** to address the nature and/or amount of sanctions to be awarded if the Court finds that sanctions are appropriate. Due to the Court's sua sponte treatment of this issue, Defendants' motion for sanctions [#18] and Plaintiff's motion to defer ruling

17

[#19] are **DENIED as moot**.

## V.      Conclusion

The Court is not unsympathetic to Carter's plight. His allegations related to the attempted theft of his invention are troublesome and, if true, will likely entitle him to relief. Unfortunately, this Court is unable to provide Carter with the relief he seeks. If Carter is to vindicate his rights, it must be in the PTO for his claims related to inventorship and in Georgia state courts for his claims related to Defendants' bad faith conduct. Therefore, for the reasons discussed above, Defendants' motion to dismiss [#6] is **GRANTED**. Plaintiff's federal claims are **DISMISSED with prejudice**. Because the Court declines to exercise supplemental jurisdiction, Plaintiff's state law claims are **DISMISSED without prejudice**. All claims against Defendant John Doe I are **DISMISSED without prejudice** for failure to effect timely service of process. Finally, because Plaintiff has unfortunately presented the Court with claims which appear to have been made without a reasonable investigation into their underlying legal bases, counsel for Plaintiff is **DIRECTED** to **SHOW CAUSE** in writing within ten (10) days of entry of this Order why he should not be sanctioned pursuant to Rule 11(b)(2). Defendants' motion for sanctions [#18] and Plaintiff's motion to defer ruling

[#19] are **DENIED as moot**.

**SO ORDERED**, this 4th day of June, 2007.

/s/ Jack T. Camp
_____
JACK T. CAMP
UNITED STATES DISTRICT JUDGE